UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 09-127-JBC

KATHERINE D. THOMPSON, ET AL., PLAINTIFFS,

V. **MEMORANDUM OPINION AND ORDER**

JP MORGAN CHASE CUSTODY
SERVICES, INC., ET AL., DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendants' motion for summary judgment (R. 14).

The court will deny summary judgment on the plaintiffs' claims for violation of 42 U.S.C. § 1981 and for slander against defendants JP Morgan Chase Bank, N.A., and Lynn Dowdy because genuine issues of material fact exist as to those claims against those defendants.

The court will grant summary judgment on the plaintiffs' claims against JP Morgan Chase Bank, N.A., and Lynn Dowdy under KRS §§ 344.370 and 446.070 because this case does not involve financial assistance for a real estate-related transaction.

The court will also grant summary judgment on the plaintiffs' claims for violation of 42 U.S.C. § 1983 against defendants JP Morgan Chase Bank, N.A., and Lynn Dowdy because those defendants did not act under color of state law.

1

Finally, the court will grant summary judgment on all claims against defendants Kathy Lewis, JP Morgan Chase Custody Services, Inc., and JP Morgan Chase and Company because the plaintiffs have failed to establish that those defendants have any involvement in this dispute.

## I. BACKGROUND

The plaintiffs, Katherine and Harold Thompson, have maintained a checking account with JP Morgan Chase Bank, N.A., ("Chase Bank") since June 2000. The Thompsons are African-American.

On March 15, 2008, the Thompsons visited a Chase Bank branch in Nicholasville, Kentucky. They presented to a bank teller fourteen money orders, which totaled $6,000, and requested cash in return. The Thompsons did not know the identity of the person who purchased and sent the money orders to them.

The Thompsons' account had insufficient funds to cover the value of the money orders, so the teller could not process the Thompsons' request without overriding the bank's computer system. The teller consulted with the Nicholasville branch's banking center manager, Lynn Dowdy. Dowdy, in turn, spoke with the bank's assistant branch manager, who declined the override.

The Thompsons had $1,200 in their account. Dowdy told them that they could cash some of the money orders and deposit the remainder, which the bank could then collect through its collection and processing systems. The Thompsons declined that proposal and left the branch.

2

Before they left the branch, however, the Thompsons claim that Dowdy told them that the bank could not accept or process some of the money orders because they were forged and that the Thompsons were committing money laundering. The Thompsons claim that Dowdy made those statements as they stood in the bank lobby and that other customers and bank employees heard the statements. Chase Bank denies that Dowdy made the statements.

The Thompsons attempted to cash the money orders elsewhere. They returned to Chase Bank later in the day, however, and deposited them in their account, less $1,000 cash.

Between the Thompsons' first and second visits to Chase Bank, someone in Illinois deposited $5,000 cash into their account. The deposit increased their balance to $6,200, which was enough to cover the $6,000 in money orders. During the Thompsons' second visit, however, Chase Bank placed a temporary hold on the amount of the deposited items less $100. Chase Bank claims that the Thompsons' account agreement and Federal Reserve Bank regulations authorized it to impose such a hold.

Chase Bank mailed written notice of the hold to the Thompsons on or about March 17, 2008, the next business day after the Thompsons deposited the money orders. The Thompsons claim that they called Chase Bank on March 21, 2008, and inquired about the status of the deposit. Chase Bank allegedly informed them that the funds had cleared but that the hold remained. After the phone call,

the Thompsons claim that they returned to the Nicholasville branch, where they were told that Dowdy refused to lift the hold. After they threatened to hire a lawyer, the Thompsons claim, Dowdy lifted the hold.

The Thompsons assert claims against Chase Bank and Dowdy for violations of 42 U.S.C. §§ 1981 and 1983; for violations of KRS §§ 344.370 and 446.070; and for slander. Chase Bank and Dowdy move for summary judgment on all of the Thompsons' claims. Because Chase Bank and Dowdy make identical arguments, the court will refer to those defendants interchangeably.

## II. DISCUSSION

### A. 42 U.S.C. § 1981 claim

A three-step burden-shifting analysis applies to the Thompsons' Section 1981 claim. *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001). Genuine issues of material fact exist at each step of the analysis.

1. *The Thompsons' prima facie case*

At the first step, the Thompsons must establish a prima facie case of intentional discrimination by showing that (1) they are members of a protected class; (2) they sought to make or enforce a contract for services ordinarily provided by Chase Bank; and (3) Chase Bank denied them the right to enter into or enjoy the benefits or privileges of their contractual relationship because (a) Chase Bank deprived them of services while similarly situated persons outside the protected class were not, or (b) the Thompsons received services in a markedly hostile

4

manner and in a manner that a reasonable person would find objectively discriminatory. *Christian*, 252 F.3d at 872. Chase Bank disputes only whether the Thompsons can prove the third element. R. 14 at 14.

A genuine issue of material fact exists as to whether the Thompsons received services in a markedly hostile and objectively discriminatory manner. The following factors guide that determination: whether Chase Bank's conduct (1) was so profoundly contrary to its manifest financial interests; (2) was so far outside widely accepted business norms; and/or (3) was so arbitrary on its face that its conduct supports a rational inference of discrimination. *Christian*, 252 F.3d at 871. Those factors raise questions of fact, so the court must view the facts in the light most favorable to the Thompsons. *See Airbrush Express, Inc. v. Jefferson Mall Co.*, No. 3:03-691-C, 2005 U.S. Dist. LEXIS 44785, at *17 (W.D. Ky. June 30, 2005).

A jury could reasonably find that Dowdy accused the Thompsons of presenting forged money orders; that she accused the Thompsons of money laundering; and that her accusations were false. A jury could also reasonably find that Dowdy's decision to maintain the hold on the Thompsons' account after the money orders cleared was a product of her false accusations.

On those findings, a jury could reasonably conclude that Dowdy's statements and conduct were so arbitrary on their face that they support a rational inference of discrimination. Dowdy knew nothing about the Thompsons' situation other than

that the money orders were of anonymous origin; that the Thompsons had insufficient funds in their account when they first visited the Chase Bank branch; and that someone deposited cash in the account after the Thompsons' first visit. Those facts might have provided Dowdy cause to decline cashing the money orders and to place a hold on the Thompsons' account until the money orders cleared. But Dowdy went further, accusing the Thompsons of committing a crime and maintaining the hold after the money orders cleared. Viewed in the light most favorable to the Thompsons, Dowdy's accusations and conduct had no basis in fact and were consequently so arbitrary that they support a rational inference of discrimination.

For the same reasons, a jury could also reasonably conclude that Chase Bank acted so profoundly contrary to its manifest financial interests and acted so far outside widely accepted business norms that the bank had discriminatory intent. The Thompsons had conducted banking with Chase Bank for nearly eight years at the time of the incident. A jury could reasonably find that a bank does not act in its manifest financial interest or in step with accepted business norms when an employee accuses longtime customers of committing a crime without any basis in fact, and thereby risks losing its business and developing a reputation for that kind of conduct. A jury could reasonably conclude that discrimination was the underlying reason for Chase Bank's conduct.

Discrimination, to be sure, is not the only inference a jury could draw from

6

the facts.  A jury, for example, could reasonably infer that Dowdy was having a bad day and that her accusations had nothing to do with the Thompsons' race.  But discrimination is the inference most favorable to the Thompsons, and that inference cannot be ignored at summary judgment.

Chase Bank argues that the Thompsons cannot prove a prima facie case because they fail to offer any proof of discrimination, such as proof that Chase Bank employees made race-based comments during the Thompsons' visits.  R. 14 at 16.  Chase Bank is asking that the court require that the Thompsons offer direct evidence of intentional discrimination in support of their prima facie case.  In *Christian*, however, the Sixth Circuit emphasized that a plaintiff need not offer direct evidence to establish a prima facie case: "Clearly, a plaintiff asserting a [Section] 1981 claim must prove intentional discrimination.  But it does not follow that the plaintiff must prove intentional discrimination as an element of the prima facie case. . . . [W]e presume the defendant's acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." 252 F.3d at 870 (internal citations and quotations omitted).  If Chase Bank believes that discrimination is not the proper inference to draw from Dowdy's conduct, it must offer its own evidence when the burden shifts.  The bank cannot compel the Thompsons to offer more evidence in support of their prima facie case.

    2. *Chase Bank's proffered legitimate, nondiscriminatory reason for its conduct*

After the Thompsons establish a prima facie case, the burden shifts to Chase

Bank to produce evidence that it had a legitimate, nondiscriminatory reason for its conduct. *Christian*, 252 F.3d at 879. Chase Bank's burden is one of production, not persuasion. *Id.*

Chase Bank can produce evidence that it had a legitimate, nondiscriminatory reason for initially placing a hold on the Thompsons' account because the bank needed to collect on the deposited instruments before releasing the funds. The Thompsons' account agreement provides that Chase Bank has no obligation to pay an item unless sufficient funds are available at the opening of business on the day the item is presented. R. 14 Ex. C-2 at 26. The Thompsons had insufficient funds at the opening of business on the day they deposited the money orders. Federal Reserve Bank regulations, moreover, authorize Chase Bank to place a hold on funds when a customer deposits more than $5,000. 12 C.F.R. §§ 229.12, 229.13(b), 229.13(h). The Thompsons' money orders exceeded the $5,000 threshold.

But genuine issues of material fact exist as to whether Chase Bank can meet its production burden on whether Dowdy had a legitimate, nondiscriminatory reason for making the accusations and refusing to lift the hold after the money orders cleared. A jury could reasonably find that Dowdy did not need to engage in such an extreme course of conduct to ensure that the money orders were genuine and that the Thompsons had sufficient funds in their account. A jury, consequently, could reasonably find Chase Bank's proffered legitimate, nondiscriminatory

8

justification insufficient.

### 3. *The Thompsons' allegation of pretext*

Even if Chase Bank meets its production burden, the burden of proof shifts back to the Thompsons to prove that Chase Bank's proffered legitimate, nondiscriminatory reason is a pretext for discrimination. *Christian*, 252 F.3d at 879. Genuine issues of material fact arise again to preclude summary judgment in Chase Bank's favor.

The Thompsons may prove pretext by showing that Chase Bank's proffered legitimate, nondiscriminatory reason has no basis in fact; that Chase Bank's reason is not the actual reason; and that Chase Bank's reason is insufficient to explain its conduct. *Id.* A jury could reasonably find for the Thompsons when considering all those points, especially the third one. A jury could reasonably find that Chase Bank's need to verify that the Thompsons had sufficient funds in their account provides an insufficient explanation for Dowdy's allegedly false accusations and her refusal to lift the hold after the money orders cleared. The fact, moreover, that Dowdy's accusations were false – at least when viewed in the light most favorable to the Thompsons – would provide a jury a reasonable basis for discrediting Chase Bank's proffered justification. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 147-48 (2000).

### 4. *Chase Bank's argument that it complied with applicable law*

In an effort to defeat the Thompsons' Section 1981 claim, but not in

reference to any particular element of the Section 1981 analysis, Chase Bank argues that its conduct was nondiscriminatory as a matter of law because the bank merely took actions that were permitted under its account agreement with the Thompsons and Federal Reserve Bank regulations. Chase Bank claims that the Thompsons cannot complain of Section 1981 discrimination because, under the account agreement and regulations, the bank had no obligation to accept their deposits at all or to make their funds immediately available. Chase Bank cites no authority in support of that proposition.

Chase Bank's argument results in a logical absurdity that would leave Section 1981 hollow. Every Section 1981 defendant in Chase Bank's circumstance could avoid liability by arguing that it complied with a contract or regulation, or that it had no obligation under a contract or regulation to transact business with a plaintiff. Section 1981 imposes a duty not to discriminate when making or performing a contract, regardless of whether a contract or another statute imposes such a duty.

Case law confirms that view. In *Keck v. Graham Hotel Systems*, the court held that a hotel could be liable under Section 1981 for refusing to lease its banquet facilities for a wedding to an African-American couple. 566 F.3d 634, 636 (6th Cir. 2009). The hotel, presumably, had no obligation to lease its facilities to any particular customer, but the absence of such an obligation did not permit the hotel to violate Section 1981. In *Christian*, a Wal-Mart store had no obligation to

10

sell toys to any particular customer. That did not preclude Section 1981 liability when a Wal-Mart employee allegedly falsely accused an African-American shopper of stealing from the toy section and had her ejected from the store. *Christian*, 252 F.3d at 864. Chase Bank's reasoning would have precluded Section 1981 liability in *Keck* and *Christian*.

Chase Bank fails to foreclose liability under Section 1981. A jury must decide whether to believe the Thompsons' or Chase Bank's version of events.

B. <u>Slander claim</u>

To prove a prima facie case of slander, the Thompsons must prove that Dowdy uttered (1) defamatory language; (2) about the Thompsons; (3) that was published; and (4) that caused injury to the Thompsons' reputation. *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004) (citation omitted). Genuine issues of material fact exist as to whether Dowdy uttered the speech; whether she published the speech; and whether the speech had defamatory meaning. Chase Bank has failed to demonstrate that it is entitled to judgment as a matter of law on the remaining elements.

1. *Whether Dowdy uttered the speech*

Genuine issues of material fact exist as to whether Dowdy actually accused the Thompsons of presenting forged money orders and committing money laundering. Chase Bank and Dowdy deny that Dowdy made the accusations. R. 14 at 5, Dowdy Aff. ¶ 10. The Thompsons claim that Dowdy did utter the

11

statements. R. 20, K. Thompson Aff. ¶ 2; H. Thompson Aff. ¶ 2. A jury could hear Dowdy's and the Thompsons' testimony and reasonably conclude that it believes the Thompsons.

    2. *Publication*

Genuine issues of material fact also exist as to whether Dowdy published her alleged statements. Publication means that Dowdy communicated her statements to someone other than the Thompsons. *Stringer*, 151 S.W.3d at 794. In responses to interrogatories, the Thompsons state that while they were in the bank lobby, "a bank officer – who was later identified to us as Lynn Dowdy, came to us and before the lobby full of customers said for all to hear, that the money orders were forgeries, that we were laundering money." R. 14 Ex. A at 3. In responses to requests for admission, the Thompsons state that "the comments were said loud enough so that the bank customers and all, if not most, of the bank employees heard the comments and conversation." *Id.* Ex. B at 16. A jury could listen to the Thompsons' testimony and reasonably believe it.

Chase Bank complains that the Thompsons have failed to present enough evidence to survive summary judgment on the publication element. Chase Bank claims, and the Thompsons do not dispute, that the Thompsons have failed to identify third-party witnesses who will testify that they heard Dowdy's statements. According to Chase Bank, the Thompsons have advanced only the conclusory, unsubstantiated allegation that other people were in the lobby when Dowdy made

the statements, and that those statements were made so loudly that others could hear them.

The allegations are sufficient to survive summary judgment. The Thompsons need not present direct evidence from a third party who actually heard the statements to prove publication. *Food Lion, Inc. v. Melton*, 458 S.E.2d 580, 585 (Va. 1995) (citing numerous jurisdictions for the same proposition). *See also* Robert D. Sack, *Sack on Defamation* § 2.5 (3d ed. 1999). A jury could listen to the Thompsons' testimony and reasonably find that their testimony accurately describes what happened in the bank lobby. A jury could also draw inferences favorable to the Thompsons from any circumstantial evidence, such as the fact that the alleged encounter occurred in the bank lobby at a time when the bank was open. *Id.*

3. *Defamatory meaning*

A jury could reasonably find that Dowdy's alleged accusations have defamatory meaning. Language has defamatory meaning when it "tends to so harm the reputation of another as to lower him [or her] in the estimation of the community or to deter third persons from associating or dealing with him [or her]." *Stringer*, 151 S.W.3d at 793 (quoting *Restatement (Second) of Torts* § 599 (1977)). A jury could reasonably conclude that the Thompsons would be lowered in the estimation of the community and that others would be deterred from dealing with them if people were to believe that they engage in money laundering.

13

4. *Injury to reputation*

The Thompsons can survive summary judgment on the issue of injury to their reputation because Dowdy allegedly accused the Thompsons of committing a crime. Statements that impute crime to a plaintiff are slanderous per se and do not require affirmative proof of injury to reputation. *Stringer*, 151 S.W.3d at 795.

5. *Statements about the Thompsons*

The Thompsons must prove that Dowdy uttered the allegedly defamatory statements about them. *Id.* at 793-94. Chase Bank does not dispute that this element is satisfied if Dowdy uttered the statements.

6. *Qualified privilege*

Even if the Thompsons can prove a prima facie case of slander, Chase Bank claims that it enjoys a qualified privilege from suit. The privilege that Chase Bank asserts does not apply because the evidence, viewed in the light most favorable to the Thompsons, indicates the presence of actual malice.

The privilege that Chase Bank asserts provides immunity from suit when "the communication is one in which the party has an interest and it is made to another having a corresponding interest" and the communication is made "in good faith and without actual malice." *Stringer*, 151 S.W.3d at 796 (quoting *Baker v. Clark*, 186 Ky. 816, 218 S.W. 280, 285 (1920)). Actual malice is knowledge of a statement's falsity or reckless disregard for the truth. *Id.* at 799 (quoting *McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 885 (Ky. 1981)).

The Thompsons allege that Dowdy accused them of committing a crime. Viewed in the light most favorable to the Thompsons, Dowdy's accusations were false. Actual malice may be inferred from the falsity of Dowdy's statements. *Id.* at 799 (quoting *Thompson v. Bridges*, 209 Ky. 710, 273 S.W. 529, 531 (Ky. 1925)). A case must go to the jury when any evidence of actual malice exists. *Id.* (quoting *Tanner v. Stevenson*, 138 Ky. 578, 128 S.W. 878, 882 (Ky. 1910)).

C. <u>KRS §§ 344.370 and 446.070 claims</u>

Chase Bank is entitled to judgment as a matter of law on the Thompsons' claims under KRS §§ 344.370 and 446.070 because this dispute does not involve financial assistance for a real estate-related transaction. Section 344.370, which is part of the Kentucky Human Rights Act, provides a cause of action when a "financial institution . . . whose business includes engaging in real estate-related transactions" discriminates "in the granting, withholding, extending, modifying, or renewing the rates, terms, conditions, privileges, or other provisions of financial assistance . . . ." The statute applies only to real estate-related transactions because the "financial institution[s]" subject to its application are limited to those to whom application is made for financial assistance related to real property. KRS § 344.010(10).

The Thompsons do not allege that Chase Bank discriminated against them with respect to financial assistance for a real estate-related transaction. They accuse the bank of denying them access to funds in their personal checking

15

account. The Thompsons do not allege that they desired to withdraw funds from their checking account to finance a real estate transaction. Bank statements printed around the time of the dispute indicate that the Thompsons spent money from their Chase account on items such as clothing and travel, not on real estate. R. 14 Ex. F. Section 344.370 does not apply to such transactions.

Because the Thompsons fail to state a cause of action under Section 344.370, they cannot state a cause of action under Section 446.070. The latter section merely provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." KRS § 446.070. That section does not provide an independent cause of action but applies only when a statute that provides a cause of action is penal in nature or fails to provide its own remedy. *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). KRS Chapter 344 is a civil statute and provides its own remedies. *See* KRS § 344.450.

D. 42 U.S.C. § 1983 claim

Chase Bank is entitled to judgment as a matter of law on the Thompsons' Section 1983 claim because it did not act under color of state law. To prevail on a Section 1983 claim against Chase Bank, which is a non-state actor, the Thompsons must prove that Chase Bank acted under color of state law. *Campbell v. PMI Food Equip. Group, Inc.*, 509 F.3d 776, 783 (6th Cir. 2007). A non-state actor acts under color of state law if the actor satisfies one of three tests: the public function

16

test, the symbiotic or relationship nexus test, or the state compulsion test. *Id.* at 784. Chase Bank satisfies none of those tests.

First, Chase Bank did not perform a function traditionally reserved exclusively to the state. *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003). In the United States, banking is a function traditionally performed in the private sector.

Second, no close nexus between the government and Chase Bank exists such that Chase Bank's conduct may be fairly treated as state conduct. Although the government regulates banks, regulation alone does not render banks state actors. *See Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).

Third, nothing in the record indicates that the state exercises such coercive power or provides such significant encouragement that Chase Bank's conduct can be deemed that of the state. *Campbell*, 509 F.3d at 776 (citation omitted).

The Thompsons provide no argument in support of the proposition that Chase Bank acted under color of state law. Their Section 1983 claim fails.

E. <u>Kathy Lewis, JP Morgan Chase Custody Services, Inc., and JP Morgan Chase and Company</u>

The court will grant summary judgment in favor of Kathy Lewis, JP Morgan Chase Custody Services, Inc., and JP Morgan Chase and Company. Lewis and the two Chase entities claim that they have no involvement in the events underlying this case. The Thompsons concede that argument, or at least they fail to offer evidence demonstrating why those parties should remain in the action. *See* R. 20 at 10.

## III. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Chase Bank's motion for summary judgment (R. 14) is **DENIED** as to the Thompsons' claims for violation of 42 U.S.C. § 1981 and for slander against Chase Bank and Lynn Dowdy.

**IT IS FURTHER ORDERED** that Chase Bank's motion for summary judgment (R. 14) is **GRANTED** as to the Thompsons' claims against all defendants under KRS §§ 344.370 and 446.070 and 42 U.S.C. § 1983. The court also grants summary judgment in favor of Kathy Lewis, JP Morgan Chase Custody Services, Inc., and JP Morgan Chase and Company on all claims against them. Those three defendants are **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that the parties shall submit, within fourteen days of the date of this order, a joint proposed schedule for the remainder of this action.

Signed on March 28, 2011

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY